**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| All Ways Concrete Pumping, LLC,[1] | ) | Case No. 23-30069 (WAK) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11

Dated: May 22, 2023

**BARNES & THORNBURG LLP**
Robert C. Folland (FL# 1007951) (*pro hac vice*)
4540 PGA Boulevard, Suite 208
Palm Beach Gardens, FL 33418
Tel: (561) 473-7560
Fax: (561) 473-7561
Email: rob.folland@btlaw.com

- *and* –

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Bar Roll No. 101522
Grayson T. Walter, Bar Roll No. 518237
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
gwalter@bsk.com

*Co-Counsel to the Debtor in Possession*

---

[1] The last four digits of the Debtor's federal tax identification number are 9046.

# Table of Contents

**Article 1. Introduction** ...................................................................................................1

**Article 2. Summary of the Plan** .......................................................................................2

    2.1 Plan Payments ..........................................................................................................2
    2.2 Plan Length ..............................................................................................................2
    2.3 Classes of Claims .....................................................................................................2
    2.4 Provisions for Executory Contracts .........................................................................3

**Article 3. History of the Debtor's Business Operations**..................................................3

    3.1 Nature of the Debtor's Business ...............................................................................3
    3.2 Ownership and Employment.....................................................................................3
    3.3. History of Business Operations of the Debtor .........................................................3
    3.4 Assets and Liabilities ...............................................................................................3

**Article 4. Filing of the Subchapter V Case and Significant Events During the Bankruptcy**........4

    4.1 Events Leading to the Filing of the Subchapter V Case ...........................................4
    4.2 Petition Date.............................................................................................................4
    4.3 First Day Motions ....................................................................................................4
    4.4. Schedules and Statement of Financial Affairs ........................................................5
    4.5 Subchapter V Trustee ..............................................................................................5
    4.6 Professionals Approved by the Bankruptcy Court....................................................5
    4.7 Asset Sales outside the Ordinary Course of Business ..............................................5
    4.8 Debtor-in-Possession Financing ..............................................................................6
    4.9 Adversary Proceedings ............................................................................................6
    4.10 Additional Filings by the Union and Funds ...........................................................6

**Article 5. General Rules of Classification and Bar Date** ...............................................6

    5.1 Introduction..............................................................................................................6
    5.2 General Rules of Classification ................................................................................6
    5.3 Type of Plan .............................................................................................................6
    5.4 Claims Bar Date .......................................................................................................7

**Article 6. Classification, Allowance, and Treatment of Claims and Equity Holders** ...................7

    A. Unclassified Claims: Administrative Expense and Priority Tax Claims...................7
    6.1.1 General ..................................................................................................................7
    6.1.2 Administrative Expenses .......................................................................................7
    6.1.3 Types of Administrative Expenses .........................................................................7
    6.1.4 Administrative Expense Claims.............................................................................8
    6.1.5 Types of Priority Tax Claims.................................................................................9
    6.1.6 Priority Tax Claims...............................................................................................9
    6.1.7 Payment of Priority Tax Claims to NYS Tax Department .....................................9
    B. Classified Claims and Equity Interests .................................................................10
    6.2    Class One: Allowed Secured Claims .................................................................10

    6.3    Class Two: Unsecured Claims ..................................................................12
    6.4    Class Three: Equity Holders ....................................................................16
    6.5    Claims Objections ....................................................................................16
    6.6    Projected Recovery of Avoidable Transfers ...........................................17
    6.7    Treatment of Executory Contracts and Unexpired Leases ......................17

**Article 7. Means for Implementation of the Plan** ...............................................18
    7.1 Means for Implementation of the Plan.................................................19
    7.2 Exit Financing ....................................................................................19
    7.3 Powers of Reorganized Debtor ...........................................................19
    7.4 Disbursing Agent ................................................................................19
    7.5 Post-Confirmation Professionals ........................................................19
**Article 8. Tax Consequences of the Plan** ..........................................................19

**Article 9. Feasibility of the Plan** .......................................................................20
    9.1 Feasibility and Source of Funds .........................................................20
    9.2 Risk Factors/Mitigating Factors .........................................................20

**Article 10. Liquidation Valuation** .....................................................................22

**Article 11. General Provisions** ..........................................................................23
    11.1 Default..............................................................................................23
    11.2 Discharge .........................................................................................23
    11.3 Automatic Stay.................................................................................23
    11.4 Title to Assets ..................................................................................23
    11.5 Exclusion of Fees and Costs ............................................................23
    11.6 Payment of Creditor Attorney Fees ..................................................24
    11.7 Payment Provisions Applicable to All Classes .................................24
    11.8 Binding Effect..................................................................................24
    11.9 Severability ......................................................................................24
    11.10 Retention of Jurisdiction by the Bankruptcy Court ........................24
    11.1 Captions ...........................................................................................25
    11.12 Professional Fees ...........................................................................25
    11.13 Modification of the Plan .................................................................25
    11.14 Final Decree ...................................................................................25
    11.15 Governing Law ...............................................................................25
**Article 12. Frequently Asked Questions** ...........................................................26

**Article 13. Definitions** ......................................................................................27

Pursuant to 11 U.S.C. §§ 1189 and 1190, All Ways Concrete Pumping, LLC, the debtor and debtor in possession ("Debtor"), in the above-captioned chapter 11, subchapter V, case ("Subchapter V Case") hereby files this *Plan of Reorganization for Small Business under Subchapter V of Chapter 11* (the "Plan") in satisfaction and discharge of all existing Claims against the Debtor.

## ARTICLE 1:
## INTRODUCTION

1.1.    The Debtor has filed this Plan in good faith and represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

1.2.    This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of the Debtor and to seek your vote to accept the Plan. You are encouraged to carefully review the full text of this document, including all exhibits and/or attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions[2] and a section of frequently asked questions appear at the end of this document. Your rights may be affected by this Plan. **You should consider discussing this document with an attorney.**

1.3.    The Debtor's Plan must describe how its Creditors will be paid. As required by 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

1.4. Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

1.5. **YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. THE DEADLINE TO OBJECT TO CONFIRMATION OF THE PLAN SHALL BE SET BY SEPARATE NOTICE AND/OR COURT ORDER THAT SHALL BE DISTRIBUTED TO ALL INTERESTED PARTIES. IF YOU FAIL TO TIMELY OBJECT TO CONFIRMATION OF THE PLAN, YOU MAY BE DEEMED TO CONSENT TO THE PLAN.**

---

[2] Unless otherwise defined herein, all capitalized terms shall be ascribed the meaning given to them in Article 13, "Definitions."

## ARTICLE 2:
## SUMMARY OF THE PLAN

2.1. **Plan Payments.** The Plan under Chapter 11, subchapter V, of the Bankruptcy Code proposes to pay all creditors of the Debtor in full from current capital and future, disposable income and/or certain exit financing loans from Five Star Bank and/or other lender. Equity interests shall remain in place throughout the life of the Plan.

2.2. **Plan Length.** The length of the Plan is three years or such shorter time as when all payments to be made under the Plan are completed.

2.3. **Classes of Claims.** The Plan provides for administrative expense and priority tax claims, one class of secured claims, two classes of prepetition unsecured claims, and one class of equity security holders. The various classes of Claims and anticipated recovery for each class under the Plan are summarized as follows:

| Class | Type | Treatment |
|---|---|---|
| Unclassified | Administrative Expense Claims | Administrative Expense Claims, if any, shall be paid in full within twenty (20) days of the Effective Date or such later date when any such claim becomes an Allowed Administrative Claim. |
| Unclassified | Priority Tax Claims | Allowed Priority Tax Claims, if any, shall be paid within twenty (20) days of the Effective Date. |
| 1 | Allowed Secured Claims of Five Star Bank | Five Star Bank's secured claims, security interests, and lien priority shall pass through the respective Subchapter V Case as unaltered and unaffected by the bankruptcy filing or this Plan, and the Five Star Credit Documents shall be reaffirmed, or, alternatively, at the Debtor's option, the Debtor may pay the Allowed Secured Claims of Five Star Bank in full on the Effective Date of the Plan. |
| 2.A | General Unsecured Claims, excluding Claims Nos. 5 and 6 on Claim Register | Allowed general unsecured claims shall be paid in full, without interest, within twenty (20) days of the Effective Date. |
| 2.B | Agreed Unsecured | The Union and Funds shall collectively receive a lump sum |

2

| | Claim of the Union and Funds (Claims Nos. 5 and 6 on Claim Register) | payment of $1,500,000 within twenty (20) days of the Effective Date of the Plan. |
|---|---|---|
| 3 | Equity Holders | Equity Holders shall retain their respective interest in the Debtor. |

2.4.    **Provisions for Executory Contracts.** The Debtor has elected to assume the Debtor's lease for a portion of the real estate property located at 2682 Turnpike Road, Auburn, New York with A1 Pumping, LLC. As detailed in Section 6.7.4, and subject to the Bankruptcy Court's approval, the Union and Funds have agreed that all collective bargaining agreements between the Union and Funds and the Debtor were terminated as of March 2019 **The Debtor rejects any and all other unexpired leases or executory contracts not specifically accepted by this Plan.**

## ARTICLE 3:
## HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

3.1    **Nature of the Debtor's Business.** In April 2005, the Debtor was established in Weedsport, New York as a small family owned and operated concrete pumping business. In September of 2011, the Debtor moved to 2682 Turnpike Road, Auburn, New York where its principal place of business remains to-date. The Debtor services the central New York area, including Auburn and Syracuse, by completing commercial, industrial, and residential construction projects. The Debtor's services include, among other things, pumping or placing concrete into designated construction sites using its fleet of "Putzmeister Boom" trucks and a telebelt. The Debtor further incorporates the First Day Declaration [Docket No. 12] herein.

3.2    **Ownership and Employment**. The Debtor is owned by Diana Sroka (51%) and Kenneth Sroka (49%). Along with Diana Sroka who is employed as the Debtor's full-time manager, the Debtor also currently employs Kenneth Sroka, a controller/office manager, salesperson, and six "pump operators." *See also* First Day Declaration.  Kenneth Sroka and Diana Sroka are shareholders of A1 Pumping LLC and Repair Plus, LLC.  Repair Plus, LLC and A1 Pumping LLC are members of the Debtor's controlled group.  There are no other members of the Debtor's controlled group and Diana Sroka and Kenneth Sroka are not shareholders of any other companies.

3.3    **History of Business Operations of the Debtor.** All Ways is a small, family-owned company. Due to the nature of its work, its operations and profitability are seasonally affected and thus revenue is typically lower in colder months and higher in warmer months. As detailed in the Debtor's Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy [Docket No. 37], filed on March 3, 2023 and incorporated herein, the Debtor's gross revenue in 2021 and 2022 was approximately $3,370,105.74 and $3,848,718.63 (before deductions and exclusions).

3.4    **Assets and Liabilities.** The Debtor's principal assets, with their estimated fair market value as of the Petition Date, are set forth in the Debtor's Schedules filed on March 3, 2023 [Docket No. 36] and are incorporated herein.

**ARTICLE 4:**
**FILING OF THE SUBCHAPTER V CASE AND**
**SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

4.1    **Events Leading to the Filing of the Subchapter V Case.** On November 20, 2020, the Upstate New York Engineers Health Fund, by Deborah Spaulding, as Administrator (the "Health Fund"); Upstate New York Engineers Pension Fund, by Deborah Spaulding, as Administrator (the "Pension Fund"); Upstate New York Engineers S.U.B. Fund, by Deborah Spaulding, as Administrator ("S.U.B. Fund"); Upstate New York Engineers Training Fund, by Theron Hogle and Eugene Hallock, as Trustees ("Training Fund"); Central Pension Fund of the International Union of Operating Engineers and Participating Employers, by its Board of Trustees ("Central Pension Fund"); Local 106 Training and Apprenticeship Fund, by Daniel J. McGraw and Eugene Hallock, as Trustees ("Local 106 Training Fund"); and the Union, by Daniel McGraw, as Business Manager (collectively, the "Union and Funds") commenced an action in the U.S. District Court of the Northern District of New York, Civil Action No. 5:20-cv-01429, (the "District Court Case") against the Debtor, as well as Kenneth Sroka and Diana Sroka, individually and as officers of the Debtor (collectively, the "Defendants"), seeking damages for failure to comply with statutory and contractual obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Labor-Management Relations Act of 1947 ("LMRA"), and certain collective bargaining agreements by, *inter alia*, failing to report certain employee hours; failing to remit contributions, fringe benefits, and deductions; breaching fiduciary duties; and actively concealing and failing to produce accurate books and records for audits.

The Debtor counterclaimed against the Union and Funds for fraudulently inducing the Debtor to enter into the collective bargaining agreements and for tortious interference with contractual relations.

Prior to the petition date, the Debtor and Union and Funds had engaged in extensive discovery but had not yet completed discovery. The Debtor, Union, and Funds vigorously oppose each other's positions and claims including, but not limited to, the effective dates of collective bargaining agreements, the work covered by the collective bargaining agreements, and the actual work performed by its employees.

4.2    **Petition Date.** On February 17, 2023, the Debtor filed its voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York, commencing the Subchapter V Case. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to section 1184 of the Bankruptcy Code.

4.3    **First Day Motions.** On February 18, 2023, the Debtor filed the following motions (collectively, the "First Day Motions"), along with that certain *Declaration of Diana L. Sroka in Support of Chapter 11, Subchapter V, Petition and First Day Motions* (the "First Day Declaration") [Docket No. 12]:

- ***Cash Collateral Motion.*** *Motion Of The Debtor For Entry Of An Order: (A) Authorizing The Debtor's Use Of Cash Collateral On An Emergency Basis, (B) Granting Adequate Protection Pursuant To Sections 105, 361 And 363 Of The Bankruptcy Code, And (C) Scheduling Interim And Final Hearings For Approval Of The Debtor's Continued*

4

*Use Of Cash Collateral* [Docket No. 7]*;*

- **Wage Motion**. *Motion For Interim And Final Orders (I) Authorizing Payment Of Prepetition Wages, Salaries And Benefits, (Ii) Authorizing The Continuation Of Employee Benefit Programs In The Ordinary Course Of Business And (Iii) Directing All Banks To Honor Prepetition Checks For Payment Of Prepetition Wage, Salary And Benefit Obligations* [Docket No. 8.]*;*
- **Utility Motion.** *Motion For Interim And Final Orders (A) Prohibiting Utility Companies From Altering, Refusing Or Discontinuing Services To And/Or Discriminating Against The Debtor On Account Of Prepetition Amounts Due, (B) Determining That The Debtor's Utilities Are Adequately Assured Of Future Payment, (C) Authorizing The Debtor To Pay Adequate Assurance Deposit And (D) Establishing Procedures For Objecting Or Requesting Additional Assurance Of Payment* [Docket No. 9]*;*
- **Cash Management Motion.** *Motion For Entry Of Interim And Final Orders Authorizing (A) Maintenance Of Existing Bank Accounts, (B) Continued Use Of Existing Cash Management System And (C) Continued Use Of Existing Business Forms* [Docket No. 10]*; and*
- **Tax Motion**. *Motion for Entry of Interim and Final Orders Authorizing the Debtor to Pay Prepetition Taxes and Regulatory Fees* [Docket No. 11]*.*

On March 2, 2023, the Debtor filed its *Motion for Entry of an Order Authorizing the Debtor to Credit Repair Plus, LLC for Payments Made on Behalf of the Debtor Pursuant to Bankruptcy Code Sections 105(a) and 363(b)* [ECF No. 33] (the "Credit Motion"). After hearings on the First Day Motions, the Court has granted the Cash Collateral Motion, Wage Motion, Utility Motion, Cash Management Motion, Credit Motion, and Tax Motion on a final basis.

4.4    **Schedules and Statement of Financial Affairs.** On March 3, 2023, the Debtor filed its Schedules and Statement of Financial Affairs.

4.5    **Subchapter V Trustee.** On February 20, 2023, the United States Trustee appointed Francis J. Brennan of Nolan Heller Kauffman LLP as the Subchapter V trustee (the "Subchapter V Trustee") [Docket No. 15].

4.6    **Professionals Approved by the Bankruptcy Court.** On March 17, 2023, the Debtor filed its retention application for Bond Schoeneck & King PLLC ("BSK") [Docket No. 61]. On March 23, 2023, the Debtor filed retention applications for Newpoint Advisors Corporation [Docket No. 63] and Barnes & Thornburg LLP [Docket No. 64]. The U.S. Trustee and Union and Funds subsequently filed objections to the employment applications of BSK and Barnes & Thornburg in which the Debtor and the Subchapter V Trustee each filed a response [Docket Nos. 71, 73]. On April 13, 2023, the Court held a hearing on the objections, and Court granted the employment of BSK and Barnes & Thornburg as co-counsel for the Debtor. The order granting the retention applications for BSK and Barnes & Thornburg was entered on April 17, 2023 and April 24, 2023 [Docket Nos. 83, 91]. The Court further granted the retention of Newpoint Advisors and entered its order on April 25, 2023 [Docket No. 92].

4.7    **Asset Sales outside the Ordinary Course of Business.** Not Applicable.

4.8    **Debtor-in-Possession financing.** Not Applicable.

4.9    **Adversary Proceedings.** On February 18, 2023, the Debtor initiated an adversary proceeding, Case No. 23-50002-5 (the "Adversary Proceeding"), against the Union and Funds. The Adversary Proceeding seeks injunctive relief to stay the District Court Case against the Debtor and two individual owners and principals, Diana and Kenneth Sroka (collectively, the "Srokas"), as well as declaratory judgment to confirm the applicability of the automatic stay to the claims brought against the Srokas in the District Court Case. The Court granted the Debtor's request for a preliminary injunction, which currently extends through June 15, 2023 [Adv. P. Docket No. 21.]

4.10    **Additional Filings by the Union and Funds.** On March 9, 2023, the Union and Funds moved to (i) to dismiss the Subchapter V Case on the ground that the debtor's filing was in bad faith; (ii) for sanctions on the grounds that the Subchapter V Case was filed in bad faith; (iii) to lift the bankruptcy stay for the sole purpose to conclude the District Court Case; (iv) to declare the stay inapplicable to the Srokas; and (v) to direct a Rule 2004 examination and production of certain documents by the Debtor (the "Dismissal Motion").The Debtor and the Subchapter V Trustee each filed a response. After a hearing on the Dismissal Motion on March 30, 2023, the Court denied the Dismissal Motion except the Court granted all relief sought by the Union and Funds in their request for a Rule 2004 Examination [Docket No. 89]. Specifically, the Court denied the Union and Funds' motion to dismiss the bankruptcy proceeding and for sanctions as well their motion for relief from the automatic stay but granted the request to have Kenneth Sroka, Diana Sroka and Tammy Wiggins submit to a Rule 2004 examination and meet and confer regarding the requests to be produced. *Id.* On April 24, 2023, the Union and Funds filed *their Motion to Strike Designation of Chapter 11 Case as a Case Under Subchapter V*., alleging that the Debtor's designation as a Subchapter V case is improper since its noncontingent liquidated claims exceed $7.5 million and, therefore, the designation should be struck and this proceeding must proceed as a straight Chapter 11 case.  The Union's and Funds' motion is returnable on June 15, 2023. The Union and Funds have agreed to withdraw the Motion to Strike without prejudice.

## ARTICLE 5:
## GENERAL RULES OF CLASSIFICATION AND BAR DATE

5.1    **Introduction.** All Claims arising from the past or present debt of the Debtor shall be bound by the provisions of this Plan. This Plan combines the classification, allowance, and treatment of Claims as provided below.

5.2    **General Rules of Classification.**  Unless otherwise provided by the Plan, a claim is classified in a particular Class for distribution purposes only to the extent the claim has not been paid, released, or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the claim qualifies with the description of such other Class of Classes. The Plan also states whether each Class of Claims or Equity Interest is Impaired or Unimpaired. A Claim or Equity Interest can be Impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

5.3    **Type of Plan.** If all of the Classes accept the Plan, and the Plan meets all of the applicable requirements of § 1129(a) (except for the disposable income requirement of § 1129(a)(15)), then the Plan will be confirmed as a "Consensual Plan." If less than all, or no

Classes accept the Plan, the Debtor will still seek to have the Plan confirmed under the "cram down" provisions of § 1191(b) of the Bankruptcy Code.  The Debtor believes this plan will be confirmed as a Consensual Plan.

5.4  **Claims Bar Date.** The general claims bar date was April 28, 2023. The governmental unit claims bar date is August 16, 2023. Only timely filed Claims, and Claims allowed by order the Court, are being treated by this Plan. Any late filed claims shall be deemed disallowed and such holder shall not receive any distribution, unless otherwise ordered by the Court in this matter.

## ARTICLE 6:
## CLASSIFICATION, ALLOWANCE, AND TREATMENT
## OF CLAIMS AND EQUITY HOLDERS

**A.  Unclassified Claims: Administrative Expense and Priority Tax Claims.**

6.1.1  **General.** Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered Impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any class: Administrative Expense Claims and Priority Tax Claims.

6.1.2  **Administrative Expenses.** Administrative Expenses include the costs and expenses associated with this bankruptcy case allowable under §503 and entitled to priority under §507(a)(2), including the fees of the Subchapter V Trustee pursuant to 28 U.S.C. § 586(e) and fees and expenses of the professionals employed in this case. The Debtor must pay all Administrative Expenses in full, though it may do so pursuant to the terms of the Plan (i.e. over the payment period set out in the Plan), unless the Administrative Claimant agrees to other treatment. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made in accordance with the Plan after the Administrative Expense is allowed by the Bankruptcy Court.

6.1.3  **Types of Administrative Expenses.** There are several types of Administrative Expenses, including the following:

(A)    Claims arising out of the ordinary course of the Debtor's business following the Petition Date that are entitled to be paid in full for the goods or services provided to the Debtor. This ordinary trade debt incurred by the Debtor after the Petition Date will typically be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

(B)    Claims for the value of goods purchased in the ordinary course of the Debtor's

7

business and received by the Debtor within the 20 days preceding the Petition Date; and

(C)    Claims for post-Petition Date fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Subchapter V Case, under § 330(a) of the Code, and the Subchapter V Trustee. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

6.1.4    **Administrative Expense Claims.** The following chart lists the Debtor's estimated Administrative Expenses as of the Confirmation Date, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | To be paid in full within twenty (20) days of the Effective Date or such later date when it becomes an Allowed Administrative Claim or, alternatively, in accordance with the payment terms agreed by the parties in the ordinary course of business. |
| Administrative Tax Claims | $0.00 | Taxes arising in the ordinary course of business after the Petition Date shall be paid in full by the Debtor in accordance with governing statutes. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $12,720.83 | To be paid in full within twenty (20) days of the Effective Date or such later date when it becomes an Allowed Administrative Claim. |

8

| Professional fees of BSK, Barnes & Thornburg, and Newpoint Advisors Corporation, as approved by the Bankruptcy Court | $360,000.00 [3] | To be paid in full within twenty (20) days of the Effective Date or such later date when it becomes an Allowed Administrative Claim. |
| Subchapter V Trustee fees, as approved by the Bankruptcy Court | To be filed by the Subchapter V Trustee | To be paid in full within twenty (20) days of the Effective Date or such later date when it becomes an Allowed Administrative Claim. |

6.1.5   **Types of Priority Tax Claims.** Priority Tax Claims are unsecured income, employment, and other taxes described by§ 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

6.1.6   **Priority Tax Claims.** Each holder of a Priority Tax Claim will be paid as set forth below:

| Name of Taxing Authority | Estimated Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Services ("IRS") | $0.00 | The Debtor shall remain current with all of its post confirmation federal tax obligations during the period it is making the payments required under this Plan.. |
| **NYS Department of Taxation & Finance ("NYS Tax Department")** | $0.00 | Allowed Priority Tax Claims of the NYS Tax Department, if any, will be paid within twenty (20) days of the Effective Date. |
| **TOTAL** | **$0.00** | |

6.1.7   **Payments of Priority Tax Claims to NYS Tax Department.** All payments under the Plan to the NYS Tax Department shall be made by mail or delivery, unless notified otherwise, at the following address:

---

[3] The professional fees are proposed as an estimate for services rendered through the date of the Plan as well as for future services to be rendered in the confirmation process of a consensual plan. The professional fees may be subject to change depending on the services required from each professional for subsequent events in the Subchapter V Case and are subject to the approval of the Bankruptcy Court.

NYS Department of Taxation & Finance
Office of Counsel
Building 9, W A Harriman Campus
Albany, NY 12227

Payments shall be deemed made on the date of receipt and shall be made by check or money order made payable to the NYS Tax Department and should be identified with the Debtor's EIN plus the Debtor's bankruptcy case number.

**B.    Classified Claims and Equity Interests.** The following are the classes set forth in the Plan and the proposed treatment that they will receive under the Plan:

    6.2    **Class One: Allowed Secured Claims.** Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

    6.2.1    **Allowed Secured Claims.** The following chart identifies the proposed treatment of Class One, which contains the Debtor's secured prepetition claims, under the Plan:

| Class 1 | Description | Treatment | Impairment |
|---|---|---|---|
| Allowed Secured Claims of Five Star Bank | Five Star Bank is the holder of three allowed secured claims, which are detailed in the Debtor's schedules and the First Day Declaration, and are summarized here: **Five Star Bank's First Allowed Secured Claim:** As of the Petition Date, the principal amount of $583,923.93 (plus | Without limiting Five Star Bank's right to payment for specific identified monetary defaults under the Five Star Credit Documents, all of Five Star Bank's Allowed Secured Claims shall be unimpaired under 11 U.S.C § 1124 and shall pass through the Subchapter V Case as unaltered and unaffected by the bankruptcy filing or Plan. | No |

| | |
|---|---|
| applicable interest, fees, and other charges) was due and owing to Five Star Bank. This claim is secured by, among other things, a first priority blanket lien on all of the Debtor's personal property and assets, as more particularly set forth in the Five Star Credit Documents. | Any amounts due on such Allowed Secured Claims shall be collected in the ordinary course of business in accordance with the terms and subject to the conditions of the Five Star Credit Documents, and the Five Star Credit Documents shall remain unaltered and unaffected by the bankruptcy filing and shall be reaffirmed. Five Star Bank shall not be required to file any separate claim in the Subchapter V Case to collect any amounts due to Five Star Bank. |
| **Five Star Bank's Second Allowed Secured Claim:** As of the Petition Date, the principal amount of $408,457.75 (plus applicable interest, fees, and other charges), was due and owing to Five Star Bank. This claim is secured by, among other things, a first priority blanket lien on all of the Debtor's personal property and assets, as more particularly set forth in the Five Star Credit Documents | In the alternative, at the Debtor's option, the Debtor may pay the Allowed Secured Claims of Five Star Bank in full on the Effective Date of the Plan. |
| **Five Star Bank's Third Allowed** | |

| | Secured Claim: As of the Petition Date, the principal amount of $1,358,389.58 (plus applicable interest, fees, and other charges) was due and owing to Five Star Bank. This claim is secured by among other things, a first priority blanket lien on all of the Debtor's personal property and assets, as more particularly set forth in the Five Star Credit Documents. | | |
|---|---|---|---|
| **TOTAL** | $2,350,771.26 | | |

  **6.3** **Class Two: Unsecured Claims.** General unsecured claims are not secured by property of the estate and are not entitled to priority under§ 507(a) of the Code.

  **6.3.1** **Allowed Unsecured Claims.** The following chart identified the Plan's proposed treatment of Class 2.A and 2.B, which contain unsecured Claims under the Debtor's Plan[4]:

| Class 2 | Description | Amount of Claims | Treatment | Impairment |
|---|---|---|---|---|
| **2.A** | General Unsecured Class, excluding Claims Nos. 5 and 6 on | The Debtor's schedules and filed proofs of claims disclose unsecured claims totaling approximately | Allowed unsecured claims in Class 2.A shall be paid in full, without interest, within twenty (20) days of the Effective Date. | No |

---

[4] The Debtor is not aware of any priority unsecured claims pursuant to 11 U.S.C § 507(a) and thus has not proposed treatment of such claims.

| | Claims Register | $43,626.10 amongst claimants.[5] | | |
|---|---|---|---|---|
| **2.B** | Claims of the Union and Funds<br><br>(Claims Nos. 5 and 6 on Claims Register) | The Debtor and the Union and Funds have a reached a settlement with respect to the Union and Funds' claim against the Debtor in the amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), which consists of any and all amounts due to the Union and Funds under the Highway Agreement and Building Agreement and all related trusts or other arrangements, including but not limited to, fringe benefit contributions and deductions, prepetition interest, withdrawal liability amounts, liquidated damages, collection costs, audit fees, and attorneys' fees and | The Union and Funds shall collectively receive a lump sum payment of $1,500,000 within twenty (20) days of the Effective Date of the Plan. The payment of $1,500,000 shall be paid via check made out to Blitman & King, LLP, as counsel for the Union and Funds, and shall be distributed to the Union and Funds by Jennifer A. Clark of Blitman & King LLP. | Yes |

---

[5] Certain unsecured creditors initially included on the Debtor's Schedules have been paid in the ordinary course of business in accordance with court orders by the Bankruptcy Orders, including, but not limited to, Excellus Health Plan, Liberty Mutual, and NYS Department of Taxation & Finance.

| | | costs (the "Union and Funds Unsecured Claim"). | | |
|---|---|---|---|---|

6.3.2 **Class 2.B and the Debtor's Mutual Release.** Pursuant to Bankruptcy Code Section 1123(b), as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Union, the Funds, their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns shall be deemed released by the Debtor and its bankruptcy estate, its officers Kenneth and Diana Sroka, and its controlled group members Repair Plus, LLC and A1 Pumping LLC from any and all claims, obligations, debts, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its bankruptcy estate, its officers Kenneth and Diana Sroka, and its controlled group members Repair Plus, LLC and A1 Pumping LLC, have asserted or could have asserted, based on or relating to, or in any manner arising from, in whole or in part, the claims asserted in this bankruptcy case, any litigation, including but not limited to, the District Court Case, through confirmation of this Plan, the Debtor's business dealings with the Union and Funds,  and any matters related to the foregoing; provided, however, such release does not include any of the Debtor's obligations or any of its officers Kenneth Sroka's and Diana Sroka's obligations to the Union and Funds under this Plan.

Pursuant to Bankruptcy Code Section 1123(b), as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and its bankruptcy estate, its officers Kenneth and Diana Sroka, and its controlled group members Repair Plus, LLC and A1 Pumping LLC, shall be deemed released by the Union and Funds, their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns from any and all claims, obligations, debts, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Union and Funds, their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns have asserted or could have asserted, based on or relating to, or in any manner arising from, in whole or in part, the claims asserted in this bankruptcy case, any litigation, including but not limited to, the District Court Case, through confirmation of this

14

Plan, the Debtor's business dealings with the Union and Funds, any claims of underfunding and/or withdrawal liability, and any matters relating to the foregoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of: (1) the release of the Union and Funds', their affiliates', trustees', administrators', officers', business managers', directors', employees', representatives', servants', heirs', executors', agents', attorneys', endorsers', subsidiaries', successors' and assigns' claims against the Debtor and the bankruptcy estate, its officers Kenneth and Diana Sroka, and its controlled group members Repair Plus, LLC and A1 Pumping LLC as outlined above; and (2) the reciprocal release of the Debtor's, the bankruptcy estate's, the Debtor's officers Kenneth and Diana Sroka, and the Debtor's controlled group members Repair Plus, LLC and A1 Pumping LLC's claims against the Union and Funds, their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns as outlined above. Further, entry of the Confirmation Order shall constitute the Bankruptcy Court's finding that this joint and mutual release is (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise, (c) in the best interests of the Debtor and its estate, (d) fair, equitable, and reasonable, (e) given and made after due notice and opportunity for hearing, and (f) a bar to the Debtor and the bankruptcy estate asserting any claims or causes of action released herein and a bar to the Union and Funds asserting any claims or causes of action released herein.

6.3.3 **Employees' Claims to Contributions, Benefits and Credits.** Debtor and its officers Kenneth and Diana Sroka represents that all collective bargaining agreements were terminated as of March 2019 and that 28,987.90 hours worked by Debtor's employees through March 2019, as shown on the Funds' and Union's payroll audits were not covered by the Union's collective bargaining agreements, that Debtor has no obligation to remit contributions to the Funds and Union on behalf of those hours, and that Debtor's former and current employees are not entitled to benefits or credits from the Union and Funds related to those hours. In furtherance of the Plan and for good and valuable consideration, the Debtor's current and former employees have reviewed the Debtor's representations, agree with the Debtor's representations, have executed the Releases/Waivers of Benefits attached as **Exhibit A**, and Debtor's former or current employees and the employees' heirs, beneficiaries, executors, administrators, personal representatives, successors and assigns release the Funds and Union from any claims for benefits or credits related to the 28,987.90 hours worked by them through March 2019 and any hours worked by them subsequent to March 2019.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of: (1) the current and former employees' release of the Union and Funds,

15

their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns for any benefits or credits subsequent to March 2019 or related to the 28,987.90 hours worked prior to March 2019.  Further, entry of the Confirmation Order shall constitute the Bankruptcy Court's finding that the employees' release is (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise, (c) in the best interests of the Debtor and its estate, (d) fair, equitable, and reasonable, (e) given and made after due notice and opportunity for hearing, and (f) a bar to the Debtor, the bankruptcy estate, or the Debtor's current or former employees and the employees' heirs, beneficiaries, executors, administrators, personal representatives, successors and assigns asserting any claims or causes of action released therein and herein.

The current and former employees of All Ways identified at Exhibit A are to be given a copy of this Plan and an opportunity to object to confirmation of the Plan.

6.4    **Class Three: Equity Holders.** Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a limited liability corporation, entities holding membership interests are Equity Interest holders.

6.4.1    **Equity Holders.** The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class 3 Equity Holder | Description | Treatment | Impairment |
|---|---|---|---|
| Diana Sroka | 51% interest in the Debtor | Diana Sroka shall retain her 51% Equity Interest in the Debtor. | No |
| Kenneth Sroka | 49% interest in the Debtor | Kenneth Sroka shall retain his 49% Equity Interest in the Debtor. | No |

6.5    **Claims Objections.** The Debtor (and Reorganized Debtor) may object to the amount or validity of any Claim filed before the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim within 90 days of the Confirmation Date, unless such time period is extended by order of the Bankruptcy Court for cause shown. Any

timely filed Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor (or Reorganized Debtor) will pay the Allowed Claim in accordance with the Plan. Notwithstanding any other provision of this Plan, no payment will be made on account of any Disputed Claim until such time, if any, as the Disputed Claim becomes an Allowed Claim in whole or in part, and no interest shall be payable on the allowed portion, if any, of any Disputed Claim. Notwithstanding the foregoing, the Debtor waives its right to object to the following claim numbers: Claims Nos. 3 filed by Noco Energy and Claim No. 4 filed by U.S. Bank NA d/b/a Elan Financial Services Bankruptcy Department. The Debtor further states that Claim No. 1 filed by American Rentals, LLC shall be allowed only in the total amount of $100.83. Likewise, the Debtor hereby provides notice of its intent to object to claim numbers: Claim No. 2 filed by NYS Department of Taxation and Finance, as the Debtor has satisfied this claim post-petition in accordance with the Bankruptcy Court's final order authorizing the Debtor to pay prepetition taxes and regulatory fees [Docket No. 50].  Finally Claims Numbers 5 and 6 as filed by the Union and Funds are allowed in the total aggregate amount of $1,500,000 as detailed in this Plan.

      6.6      **Projected Recovery of Avoidable Transfers.** The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions but reserves the right to pursue such preference, fraudulent conveyances, or other avoidance actions should the Debtor become aware of such avoidable transfers.  The Debtor, by counsel, has reviewed pre-petition transactions and does not believe that any avoidable transfers exist.

      6.7      **Treatment of Executory Contracts and Unexpired Leases.**

      6.7.1    **General.** An "Executory Contract" is a contract under which significant performance remains for the applicable Debtor and the counterparty to the executory contract. An unexpired lease of non-residential real property is also an executory contract ("Unexpired Lease"). The Debtor has the right to reject, assume (i.e. accept), or assume and assign Executory Contracts and Unexpired Leases to another entity, subject to the Bankruptcy Court's approval.

      6.7.2    **Assumption of Unexpired Lease.** The Unexpired Lease with A1 Pumping, LLC and the Unexpired Lease with Eastern Managed Print Network shall be assumed by the Debtor as of the Effective Date. Assumption means that the Debtor/Reorganized Debtor has elected to continue to perform its obligations under such Executory Contract or Unexpired Lease, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. There are no defaults under the Unexpired Lease with A1 Pumping, LLC or Eastern Managed Print Network.

      **6.7.3    Objection to Assumption. If you object to the assumption of your Executory Contract or Unexpired Lease, the proposed cure amount for any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the proposed assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.**

      6.7.4    **Collective Bargaining Agreements.**  In January 2019, the Debtor provided written notice to the Union of its desire to terminate its collective bargaining agreements. While the notice was effective to unequivocally terminate the Debtor's Heavy Highway collective bargaining

agreement as of March 2019, a dispute exists as to whether the Debtor effectively and timely terminated its Building Agreement with the Union as of March 2019 and whether the parties' conduct thereafter resulted in termination of all collective bargaining agreements as of March 2019 and estops the Funds and Union from claiming the existence of a contract thereafter. Given the issues in dispute and based upon proceeding in the District Court case, the Debtor, Union and Funds have agreed that the Debtor was bound to collective bargaining agreements through March 2019 and that all collective bargaining agreements terminated as of March 2019.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the termination of all collective bargaining agreements as of March 2019. Further, entry of the Confirmation Order shall constitute the Bankruptcy Court's finding that this termination is (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise, (c) in the best interests of the Debtor and its estate, (d) fair, equitable, and reasonable, (e) given and made after due notice and opportunity for hearing, and (f) a bar to the Debtor, the bankruptcy estate, and the Debtor's former and current employees asserting any claims or causes of action against the Debtor, the Union, the Funds, their affiliates, trustees, administrators, officers, business managers, directors, employees, representatives, servants, heirs, executors, agents, attorneys, endorsers, subsidiaries, successors and assigns for benefits or credits, monetary or injunctive relief based on work for All Ways after March 2019.

6.7.5 **Rejection of Other Executory Contracts and Unexpired Leases.** Further, as of the Confirmation Date, the Debtor will be conclusively deemed to have rejected all Executory Contracts and/or Unexpired Leases not assumed or rejected prior to the Confirmation Date as of the Confirmation Date. Rejection means that the Debtor elected not to continue to perform the obligations under such contract or lease. If the Debtor has elected to reject an Executory Contract or Unexpired Lease, the counterparty to the Executory Contract or Unexpired Lease will be treated as an Unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

6.7.6 **The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract or Unexpired Lease Effectuated upon Confirmation of the Plan is 20 Days after the Confirmation Date. Any Claim based on the rejection of an Executory Contract or Unexpired Lease will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise. The Union and Funds shall not be entitled to any additional payment or consideration beyond that provided for under the Plan on account of the rejection of the Building Agreement.**

## ARTICLE 7:
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1 **Means for Implementation of the Plan.** Upon confirmation of the Plan and the occurrence of the Effective Date, the Debtor's current management will continue in their day-to-day management of the Debtor. Based on the Debtor's projected cash flows in the Financial Projections prepared by the Debtor's financial advisor, Newpoint Advisors Corporation, cash flows from the Debtor's business will be sufficient to meet all of Debtor's obligations under the Plan. A true and correct copy of the Financial Projections are attached hereto as **Exhibit B.**

18

The Debtor's projected cash flows in the Financial Projections are conservative relative to historical experience and provide sufficient leeway for unforeseen circumstances. Nothing in this Plan shall prohibit the Debtor, in its sole discretion, from raising additional capital on and after the Effective Date.  Further, on Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, cash and cash equivalents, contracts and contract rights, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equity Interests except as provided in the Plan, to the Reorganized Debtor, subject to the security interest and other rights of Five Star Bank pursuant to this Plan. Based on current operations, the Debtor expects to have sufficient cash on hand to make the payments it has agreed to pay on or within twenty (20) days of the Effective Date. Except for those restrictions expressly imposed by the Plan or by the Confirmation Order, on and after the Effective Date, the Reorganized Debtor shall operate its business and shall use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions imposed under or by virtue of the Bankruptcy Code, the Bankruptcy Rules and any other applicable rules and guidelines.

7.2    **Exit Financing**. Notwithstanding anything contained herein, this Plan shall not be effective and the Effective Date of this Plan shall not commence until the Debtor has reached agreement with Five Star Bank or such other lender acceptable to Debtor to obtain the borrowing of funds as necessary to implement the payments contemplated by the terms of this Plan.

7.3    **Powers of Reorganized Debtor**. Without limiting the generality of the foregoing, the Reorganized Debtor may (i) continue the Debtor's business operations; (ii) obtain credit for business operations and to fund payments to creditors if necessary; (iii) make capital expenditures; (iv) compromise or settle any post-Effective Date liability, claim or cause of action; and (v) pay all post-Effective Date claims in its ordinary course of business, including claims of its professional representatives for services rendered and costs incurred from and after the Effective Date, without application to or approval by the Bankruptcy Court.

7.4    **Disbursing Agent.** Distributions to Creditors provided for in this Plan, if the Plan is confirmed under § 1191(a) of the Bankruptcy Code, will be made by the Reorganized Debtor. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, distributions to Creditors provided for in the Plan will be made by the Reorganized Debtor in accordance with § 1194(b) of the Bankruptcy Code.

7.5    **Post-Confirmation Professionals.** Post Effective Date, the Reorganized Debtor may continue to employ, or hire new, any professionals that it, in its business judgment, believe best serve the interests of the Reorganized Debtor, its business operations and obligations under the Plan, and compensate such professionals, without further order of the Court.

<u>**ARTICLE 8:**</u>
<u>**TAX CONSEQUENCES OF THE PLAN**</u>

8.1    **CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS OR ADVISORS.** A detailed discussion of the federal, state and local income tax consequences of the Plan is not practicable under the circumstances

of this Subchapter V Case, and the Debtor expresses no opinion thereon. Because the income tax consequences of the Plan may be different for different parties, each party is urged to seek advice from its own tax advisor with respect to the income tax consequences of the Plan. The Debtor believes, however, that there will be no adverse tax consequences to the bankruptcy estate as a result of the Plan's consummation. No rulings have been or are expected to be requested from the IRS with respect to any tax aspects of the Plan. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein. Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness ("COD") income recognized during the taxable year. COD income generally equals the excess of the adjusted issue price of the indebtedness discharged over the sum of (i) the amount of cash, (ii) the issue price of any new debt, and (iii) the fair market value of any other property (including stock) transferred by the debtor in satisfaction of such discharged indebtedness. COD income also includes any interest that has been previously accrued and deducted but remains unpaid at the time the indebtedness is discharged. The Debtor does not expect to have any COD income because this Plan proposes to pay all creditors in full. However, any amount of income or loss from the transfer of appreciated or depreciated property, as well as COD income due to implementation of the Plan would, pursuant to Section 108(e)(8) of the Tax Code, be allocated to the owners of Equity Interests in the Debtor prior to the Effective Date. Pursuant to the Plan, each holder of an Allowed Claim will receive cash distributions in satisfaction of its Allowed Claim, and should be treated as exchanging such Claim for cash in a fully taxable exchange. The holder of an Allowed Claim should recognize gain or loss equal to the difference between (a) the amount of cash received that is not allocable to accrued interest and (b) the holder's tax basis in the Allowed Claim surrendered therefor by the holder. If the holder of an Allowed Claim held such claim as a capital asset, such gain or loss will constitute a capital gain or loss (long term if held for more than one year), otherwise, such gain or loss will be ordinary in nature. To the extent that a portion of the cash received in exchange for the Allowed Claims is allocable to accrued but untaxed interest, the holder may recognize ordinary income.

**HOLDERS OF ALLOWED CLAIMS OR EQUITY INTERESTS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF INCOME, GAIN OR LOSS FOR FEDERAL INCOME TAX PURPOSES, ON ACCOUNT OF THEIR ALLOWED CLAIMS OR EQUITY INTERESTS.**

## ARTICLE 9:
## FEASIBILITY OF THE PLAN

9.1 **Feasibility and Source of Funds.** As a condition to confirmation, the Bankruptcy Code generally requires that confirmation is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization. This requirement is generally referred to as the feasibility test of § 1129(a)(11) of the Bankruptcy Code. If applicable, as set forth under § 1191(c)(3) of the Bankruptcy Code, there must be a reasonable likelihood that the Debtor will be able to make all payments under the Plan. The Debtor submits that the Plan is feasible. As set forth in the Financial Projections attached hereto as **Exhibit B**, the Debtor expects to generate sufficient cash from operations to satisfy all Allowed Claims in full pursuant to the Plan and to utilize certain borrowed funds from Five Star Bank or such other lender to satisfy Claim Nos. 5 and 6 of the Union and Funds.

20

9.2 **Risk Factors/Mitigating Factors.** The Debtor's available cash as of the Effective Date and cash generated from business operations after the Effective Date is expected to be sufficient to fund the Debtor's operations and make all anticipated Plan payments on and after the Effective Date. However, the following specific risks exist in connection with confirmation and implementation of the Plan:

A. **Bankruptcy Law Considerations.** Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtor believes that the classification of the Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims or Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

In the event that certain, or even all, Classes fail to meet the minimum Class vote requirements, the Debtor may request a cramdown of such non-accepting Classes. The Debtor believes that the Plan satisfies the cramdown requirements. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual confirmation or consummation of the Plan may result in, among other things, increased expenses relating to professional compensation. Failure to secure a cramdown or to suitably amend the Plan, if required, will in all likelihood prevent confirmation of the Plan.

If no plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of the Debtor's creditors, the Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in no distributions being made to unsecured creditors or the Debtor's equity security holders and smaller distributions being made to the Debtor's secured lender than those provided for in the Plan because of (1) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than the Debtor's business being reorganized as a going concern; (2) additional administrative expenses involved in the appointment of a trustee; and (3) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, and from the rejection of leases and other executory contracts in connection with a cessation of the Debtor's operations.

B. **Business Risks.** The concrete pump industry is a niche, seasonal industry. There is no assurance that the Reorganized Debtor will be able to successfully compete, achieve its growth objectives or sustain or build its reputation in the central New York area. Accordingly, the Debtor cannot predict with certainty what effect general business and economic conditions and any competitive pressures will have on the business going forward.

21

C.    **Risks Associated with Exit Financing.** The Debtor is currently in negotiations with Five Star Bank and/or other lenders in order to secure certain exit financing. Such negotiations are not finalized and the Debtor cannot predict with certainty the outcome of such negotiations.

D.    **Risks Associated with Forward Looking Statements.** The financial information contained in this Plan has not been audited. In preparing this Plan, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in the Plan, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

This Plan contains projections concerning the financial results of the Reorganized Debtor's operations, including the Financial Projections, which are, by their nature, forward-looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtor may turn out to be different from the Financial Projections. The Financial Projections represent Newpoint Advisor Corporation's best estimate of the Debtor's future financial performance.

Specifically, the projected financial results contained in this Plan reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtor, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and consummation of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtor, including, without limitation, the Reorganized Debtor's ability to maintain or increase revenue and gross margins, control future operating expenses or make necessary capital expenditures; (c) general business and economic conditions; and (d) overall industry performance and trends.

The Financial Projections also depend on the Debtor's ability to retain key personnel. While the Debtor believe that the Financial Projections are reasonable and conservative, there can be no assurance that they will be realized and are subject to known and unknown risks and uncertainties, many of which are beyond their control. If the Debtor does not achieve these projected financial results, (1) the Reorganized Debtor may lack sufficient liquidity to maintain operations after the Effective Date, and (2) the Reorganized Debtor may be unable to pay post-Effective Date obligations. Moreover, the financial condition and results of operations of the Reorganized Debtor from and after the Effective Date may not be comparable to the financial condition or results of operations reflected in the Debtor's historical financial statements.

## ARTICLE 10:
## LIQUIDATION VALUATION

**10.1    Liquidation Analysis.** To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit C**. As set forth therein, after taking into account the

anticipated liquidation value of the Debtor's assets, as well as the costs of administration of a Chapter 7 case, it is unlikely if the Subchapter V Case is converted to one under Chapter 7 of the Bankruptcy Code any funds will remain for unsecured creditors after satisfaction of Five Star Bank's Allowed Secured Claims.

The Debtor estimates, that under a best case liquidation scenario, Five Star Bank would receive not more than a 96% distribution on its Allowed Secured Claims and unsecured creditors would receive no distribution on their Allowed Claims, as compared to a 100% payment for all Creditors with Allowed Claims under the Plan. The liquidation valuations in the Liquidation Analysis have been prepared solely for use in this Plan and do not represent values that are appropriate for any other purpose. Nothing contained in the Liquidation Analysis is intended to be or constitutes a concession by or admission of the Debtor for any purpose.

## ARTICLE 11:
## GENERAL PROVISIONS

11.1    **Default.** If any of the following events occur, the Debtor will be in breach of this Plan ("<u>Default</u>"):

**(a)** Failure to pay any amount due under the Plan when due; or
**(b)** Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

Should the Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtor fails to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtor has failed to make when due, at its option, may declare that the Debtor is in default of this Plan.

11.2    **Discharge.** If the Plan is confirmed consensually under § 1191(a), then on the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1) of the Bankruptcy Code, except for the Allowed Secured Claims of Five Star Bank. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, then as soon as practicable after the completion by the Debtor of all payments due within the first three years of the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the entry of the order for relief in this Subchapter V Case, the Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under § 503 of the Bankruptcy Code and provided for in the Plan, except for the Allowed Secured Claims of Five Star Bank.

11.3    **Automatic Stay.** In either instance, the automatic stay imposed under § 362(a) of the Bankruptcy Code shall remain in place until the Debtor is granted a discharge, the automatic stay is terminated by Court a Final Order, or the Subchapter V Case is otherwise closed or dismissed. 11 U.S.C. § 362(c)(2). For the avoidance of doubt, nothing herein discharges the Debtor from obligations

under Executory Contracts and Unexpired Leases that were assumed pursuant to § 365 of the Bankruptcy Code.

11.4    **Title to Assets.** On the Effective Date if the Plan is confirmed under § 1191(a) and otherwise on the date of discharge under Section 11.2 of this Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, cash and cash equivalents, contracts and contract rights, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equity Interests except for the security interests and liens securing the Allowed Secured Claims of Five Star Bank, or as provided in the Plan, the Five Star Bank Credit Documents, and/or the Confirmation Order.

11.5    **Exclusion of Fees and Costs.** Each Creditor waives and is excluded from collecting: (i) default interest and penalties under any contract or other agreement; (ii) any and all rights to accelerate payment except as provided herein; (iii) contractual attorneys' fees unless the contract giving rise to the claim so provides and the claim is an allowed secured claim, in which such fees may be allowed only to the extent of over-security as it existed on the Petition Date.

11.6    **Payment of Creditor Attorney Fees.** Attorney fees included as a Claim or part of a Claim by a Creditor shall be paid only to creditors with oversecured claims and only if the amount of the fee is itemized and reasonable as determined by the Debtor. If the creditor disagrees with the Debtor's determination, then the recovery of fees shall be determined by the Court. Any Creditor seeking the payment of attorney fees shall supply the Debtor with requested information sufficient for the Debtor to determine fee reasonableness.

11.7    **Payment Provisions Applicable to All Classes.** The payments, distributions, and other treatments provided with respect to each Class shall be in complete satisfaction, discharge, and release of the Claims and allowed interests in such Class except as otherwise expressly provided with respect to a Class.

11.8    **Binding Effect.** If the Plan is confirmed, the provisions of the Plan will bind the Debtor, the Reorganized Debtor and all Creditors and Equity Interest holders, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.9    **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

11.10    **Retention of Jurisdiction by the Bankruptcy Court.** Until the Subchapter V Case is closed, the Bankruptcy Court shall retain the most extensive jurisdiction permissible. Except as otherwise provided in this Plan, the Bankruptcy Court shall retain jurisdiction to and to adjudicate and enforce all other case causes of action which may exist on behalf of the Debtor. In addition to the foregoing, the Bankruptcy Court shall retain exclusive jurisdiction for the following specific purposes after the Confirmation Date:

        (a) to modify this Plan after the Confirmation Date, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b) to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan. Nothing contained herein shall prevent the Debtor (or Reorganized Debtor) from taking such action as may be necessary in the enforcement of any cause of action which the Debtor has or may have and which may not have been enforced or prosecuted by the Debtor, which cause of action shall survive confirmation of this Plan and shall not be affected thereby except as specifically provided herein;

(c) to hear and determine all Claims against and Equity Interests in the Debtor, to assure the performance by the Debtor (or Reorganized Debtor) of its obligations to make Distributions under this Plan; including, but not limited to Distributions to Holders of Allowed Claims (or to the Subchapter V Trustee, as the case may be) pursuant to the provisions of this Plan;

(d) to enter such orders or judgments, including, but not limited to, injunctions as may be necessary or appropriate to (i) enforce the title, rights, and powers of the Debtor (or Reorganized Debtor), and (ii) implement or consummate the provisions of this Plan and the Confirmation Order, except as otherwise provided herein;

(e) to decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date, or brought thereafter by the Reorganized Debtor, including the causes of action retained and preserved under this Plan, and to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor (or Reorganized Debtor) arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Subchapter V Case;

(f) to hear and determine all applications for compensation of professionals and reimbursement of expenses under §§ 330, 331, or 503(b) of the Bankruptcy Code;

(g) to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated or if Distributions pursuant to this Plan are enjoined or stopped;

(h) to determine any other matters that may arise in connection with or relate to this Plan or the Confirmation Order;

(i) to consider and act on the compromise and settlement of any Claim against or Interest in the Debtor or its estate, including, without limitation, any disputes relating to the Bar Date;

(j) to hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(k) to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Subchapter V Case; and

(l) to enter an order closing the Subchapter V Case.

11.11   **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.12    **Professional Fees.** Final applications for payment of compensation and reimbursement of expenses arising on or before the Effective Date shall be filed by any professionals required to do so under §§ 330, 331 and/or 503(b) of the Bankruptcy Code and/or Court order on or before the 45th day after the Effective Date, unless such time is extended by further order of the Court.

11.13    **Modification of the Plan.** The Debtor or Reorganized Debtor may modify the Plan as provided in § 1193 of the Bankruptcy Code.

11.14    **Final Decree.** Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

11.15    **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without giving effect to the principles of conflicts of law thereof.

## <u>ARTICLE 12:</u>
## <u>FREQUENTLY ASKED QUESTIONS</u>

12.1    **What Is the Debtor Attempting to Do in Subchapter V of Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a Debtor attempts to restructure the Claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. Subchapter V is a subchapter of Chapter 11 that is specifically tailored to small businesses that, as of the Petition Date, have liquidated, non-contingent debt in an aggregate amount of less than $7,500,000. The Plan is the legal document which sets forth the manner and the means by which holders of Claims against a Debtor will be treated.

12.2    **How Do I Determine Which Class I Am In?** To determine the Class of your Claim or interest, you must first determine whether your Claim is secured or unsecured. Your Claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your Claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is becomes effective. Article 6 lists all Classes of Claims and Equity Interests.

12.3    **Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its Creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay Creditors as proposed in the Plan while the Debtor remains in bankruptcy.

12.4    **What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan can be accomplished consensually, under § 1191(a) of the Bankruptcy Code, which requires, among other things, that each Impaired Class of Claims and Equity Interests vote in favor of the Plan

by two-thirds of that Class' total dollar amount and a majority in number of that Class' Claims actually voted. If one or more, or even all of the Classes of Claims and Interest do not accept the Plan, alternatively, the Debtor may still confirm the Plan if certain additional elements regarding the ultimate fairness of the Plan to the creditors are established as required under § 1191(b) of the Bankruptcy Code.

12.5    **Am I Entitled to Vote on the Plan?** Any Creditor of the Debtor whose Claim is Impaired under the Plan is entitled to vote, if either (i) the Creditor's Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the Creditor has filed a proof of Claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Creditor to vote upon the Creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

12.6    **How Do I Determine Whether I Am in an Impaired Class?** Article 6 of the Plan identifies the Classes of Creditors whose Claims are Impaired and Unimpaired. If your Claim is Impaired, your vote will be considered by the Bankruptcy Court.

12.7    **When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all Claim holders for their review, consideration and approval. The deadline to return a ballot shall be set by separate notice, which shall be distributed to claim holders. A ballot must be mailed so that it is actually received by Debtor's counsel  at the following address:

**BOND, SCHOENECK & KING, PLLC**
Attn: Grayson T. Walter
One Lincoln Center
Syracuse, New York 13202

12.8    **How Do I Determine When and How Much I Will Be Paid?** In the Summary at the beginning of the Plan and in Article 6, the Debtor has provided both written and financial summaries of what it anticipates each Class will receive under the Plan.

## ARTICLE 13:
## DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code:

13.1    **Administrative Claimant:** Any person entitled to payment of an Administrative Expense.

13.2    **Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the

Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

13.3    **Administrative Tax Claim:** Any tax incurred pursuant to Section 503(b)(l)(B) of the Code.

13.4    **Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) the claim was included in the Debtor's Schedules as not contingent, unliquidated, or disputed or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (c) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

13.5    **Allowed Administrative Claim:** An Administrative Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

13.6    **Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

13.7    **Allowed Secured Claim:** Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

13.8    **Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

13.9    **Adversary Proceeding:** That certain adversary proceeding filed by the Debtor against the Union and Funds on February 18, 2023 and titled Case No. 23-50002-5.

13.10    **Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code (11 U.S.C. § 101 *et seq.*).

13.11    **Bankruptcy Court or Court:** The United States Bankruptcy Court for the Northern District of New York.

13.12    **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

13.13    **Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct

obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

13.14   **Subchapter V Case:** This case under chapter 11, subchapter V, of the Bankruptcy Code in which the Debtor is the Debtor-in-Possession.

13.15   **Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

13.16   **Class:** A category of holders of Claims or interests which are substantially similar to the other Claims or interests in such class.

13.17   **Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

13.18   **Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

13.19   **Confirmation Hearing:** The hearing to be held upon notice of the court to consider confirmation of the Plan.

13.20   **Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

13.21   **Creditor(s):** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

13.22   **Debtor and Debtor-in-Possession:** All Ways Concrete Pumping, LLC, the debtor-in-possession in this Subchapter V Case.

13.23   **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

13.24   **Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

13.25   **District Court Case:** That certain action in the U.S. District Court of the Northern District of New York, Civil Action No. 5:20-cv-01429 brought by the Union and Funds against the Debtor and Kenneth Sroka and Diana Sroka, individually and as officers of the Debtor.

13.26  **Effective Date:** The effective date of this Plan is 20 days after entry of the order confirming the Plan unless the Plan or confirmation order provides otherwise.

13.27  **Equity Interest:** An ownership interest in the Debtor.

13.28  **Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

13.29  **Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

13.30  **Five Star Credit Documents**: As such term is defined in the Final Order: (A) Authorizing the Debtor's Use of Cash Collateral and Credit Cards and (B) Granting Adequate Protection, entered on April 10, 2023 at Docket No. 78.

13.31  **IRC:** The Internal Revenue Code

13.32  **Petition Date:** February 17, 2023, the date the voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code was filed.

13.33  **Plan:** This *Debtor's Plan of Reorganization for Small Business Under Subchapter V of Chapter 11*, either in its present form or as it may be altered, amended, or modified from time to time.

13.34  **Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

13.35  **Projected Disposable Income:** Income received by the Debtor as defined by Section 1191(d) of the Bankruptcy Code for the period of three years, commencing on July 1, 2023 and ending on July 1, 2026.

13.36  **Reorganized Debtor:** The Debtor after the Effective Date.

13.37  **Schedules and Statement of Financial Affairs:** Schedules and Statement of Financial Affairs, including any amendments, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

13.38  **Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

13.39  **Subchapter V Case:** The above-captioned chapter 11, subchapter V, case filed on February 17, 2023 in the U.S. Bankruptcy Court for the Northern District of New York.

13.40  **Subchapter V Trustee:** Francis J. Brennan of Nolan Heller Kauffman LLP, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

13.41  **Union:** Upstate New York Operating Engineers, Local No. 158

13.42  **Union and Funds:** The Upstate New York Engineers Health Fund, by Deborah Spaulding, as Administrator (the "Health Fund"); Upstate New York Engineers Pension Fund, by Deborah Spaulding, as Administrator (the "Pension Fund"); Upstate New York Engineers S.U.B. Fund, by Deborah Spaulding, as Administrator ("S.U.B. Fund"); Upstate New York Engineers Training Fund, by Theron Hogle and Eugene Hallock, as Trustees ("Training Fund"); Central Pension Fund of the International Union of Operating Engineers and Participating Employers, by its Board of Trustees ("Central Pension Fund"); Local 106 Training and Apprenticeship Fund, by Daniel J. McGraw and Eugene Hallock, as Trustees ("Local 106 Training Fund"); and the Union, by Daniel McGraw, as Business Manager.

13.43  **Unsecured Claim:** Claims that are not secured by property of the Debtor's estate.

13.44  **Unsecured Creditor:** Any Creditor that holds a Claim in the Subchapter V case which is not a secured Claim.

Dated: May 22, 2023                     Respectfully submitted,

                                        /s/ Robert C. Folland
                                        **BARNES & THORNBURG LLP**
                                        Robert C. Folland (FL# 1007951) (*pro hac vice*)
                                        4540 PGA Boulevard, Suite 208
                                        Palm Beach Gardens, FL 33418
                                        Tel: (561) 473-7560
                                        Fax: (561) 473-7561
                                        Email: rob.folland@btlaw.com

                                        - *and* –

                                        **BOND, SCHOENECK & KING, PLLC**
                                        Stephen A. Donato, Bar Roll No. 101522
                                        Grayson T. Walter, Bar Roll No. 518237
                                        Office and Post Office Address:
                                        One Lincoln Center
                                        Syracuse, New York 13202
                                        Tel: (315) 218-8000
                                        Fax: (315) 218-8100
                                        Email: sdonato@bsk.com
                                        gwalter@bsk.com

                                        *Co-Counsel to the Debtor in Possession*

31

Executed this ___ day of _____, 2023     ALL WAYS CONCRETE PUMPING, LLC

_____

By:
Its:

Executed this ___ day of _____, 2023     DIANA SROKA

_____

By: Diana Sroka

Executed this ___ day of _____, 2023     KENNETH SROKA

_____

By: Kenneth Sroka

Executed this ___ day of _____, 2023     REPAIR PLUS, LLC

_____

By:
Its:

Executed this ___ day of _____, 2023     A1 PUMPING LLC

_____

By:
Its:

Executed this ___ day of _____, 2023     THE UPSTATE NEW YORK ENGINEERS
HEALTH FUND

_____

By:
Its:

32

Executed this ___ day of _____, 2023    UPSTATE NEW YORK ENGINEERS
PENSION FUND

_____
By:
Its:

Executed this ___ day of _____, 2023    UPSTATE NEW YORK ENGINEERS S.U.B.
FUND

_____
By:
Its:

Executed this ___ day of _____, 2023    UPSTATE NEW YORK ENGINEERS
TRAINING FUND

_____
By:
Its:

Executed this ___ day of _____, 2023    CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING
EMPLOYERS

_____
By:
Its:

Executed this ___ day of _____, 2023    LOCAL 106 TRAINING AND
APPRENTICESHIP FUND

_____
By:
Its: